## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVAN BASSAW, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>UNITED INDUSTRIES CORPORATION and SPECTRUM BRANDS, INC.,<br><br>       Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shivan Bassaw ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants United Industries Corporation and Spectrum Brands, Inc. (collectively, "Defendants").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Hot Shot Concentrated Deep Reach Fogger ("Hot Shot") in the United States.

2. Defendants represent that Hot Shot "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and "kills hidden bugs … penetrates into crevices, cracks & carpet fibers," as shown in the image below:



3.     Unfortunately for consumers however, Hot Shot is a complete sham.  As explained below, Hot Shot is ineffective for pest control because it cannot reach into hiding spots where pests dwell and because the pests it targets are resistant to cypermethrin, the product's active ingredient.  The product is ineffective and worthless.

4.     The draw to consumers for using insect foggers, such as Hot Shot (also sometimes referred to as "bug bombs"), is easily understood.  Many consumers are desperate to alleviate pest problems in their homes, but do not wish to incur the expense of hiring a pest control professional.  So they purchase Hot Shot in the hopes of an easy fix.  As the New York Times has noted, "in the battle against bugs, it is often low-income neighborhoods that suffer the most.

After all, when the choice comes down to a $175 visit from an exterminator of a $3 fogger, the fogger will most often win out."[1]

5.      It is therefore unsurprising that insect foggers, such as Hot Shot, are so popular. The U.S. Environmental Protection Agency ("EPA") has estimated that approximately 50 million foggers are used annually.[2]

6.      Unfortunately for consumers, these foggers are too good to be true.  As Dr. Michael Potter, an entomology professor at the University of Kentucky, has explained, "[w]hile foggers require little effort to use, they seldom resolve, and can exacerbate, indoor pest problems."[3]  As explained below, this is true for two reasons.

7.      First, when foggers are activated, "[t]he entire contents are released upwards, into the airspace, where the aerosol droplets remain suspended for a period of time and then gradually settle onto floors, counter tops and other surfaces."  However, "[w]hen applied in this manner, very little insecticide actually penetrates into cracks, voids, and other secluded locations where cockroaches, ants, bed bugs, and most other household pests congregate and spend most of their time."[4]

8.      This is a big problem because, as Defendants' own product packaging suggests, the "cracks" and "crevices" are where the insects live and breed.  Simply put, the product cannot be effective if it cannot reach the pests.

---

[1] Marc Santora, *Explosion in Apartment Highlights Risks of Using Chemical Foggers to Kill Insects*, NY Times, July 12, 2013, *available at* https://www.nytimes.com/2013/07/13/nyregion/a-risky-weapon-in-the-fight-against-insects.html.

[2] Susan C. Jones, *Ineffectiveness of Over-the-Counter Total-Release Foggers Against the Bed Bug (Heteroptera: Cimicidae)*, 105 J. of Econ. Entomology 3 at pp. 957-963 (June 2012), *available at* https://academic.oup.com/jee/article/105/3/957/913369.

[3] Michael F. Potter, *Limitations of Home Insect Foggers ("Bug Bombs")*, College of Agriculture Food and Environ. at University of Kentucky, *available at* https://entomology.ca.uky.edu/ef643.

[4] *Id.*

9.      Second, the active ingredients in Hot Shot, cypermethrin and tetramethrin, are forms of pyrethrin, which is theoretically supposed to act as an insecticide.  However, pyrethrins "are seldom lethal to roaches, ants, … spiders … and other crawling pests."[5]  That is because these insects quickly build up a resistance to this chemical.  As an article in the Journal of Pesticide Reform noted:  "Resistance to cypermethrin has developed quickly in insects exposed frequently.  Both agricultural and household pest species have developed resistance.  The degree of resistance is usually measured with a resistance ratio, the ratio between the amount of a pesticide required to kill a resistant insect and the amount required to kill average (non-resistant) insects. …  Among household pests, resistance ratios have ranged from 5 to 100.  (The resistance ratio of 5 was enough to render synthetic pyrethroids ineffective.)."[6]

10.     Independent peer-reviewed research published in the journal *BMC Public Health* explained the problem with insect foggers as threefold:  "First … wild cockroaches could behaviorally avoid the insecticide residues.  Second, aerosolized particles from [foggers] likely failed to reach places where cockroaches normally shelter.  We found relatively little insecticide residues on walls near the [fogger[ discharge sites, compared to horizonal surfaces.  Since cockroaches are often found under horizontal surfaces (e.g., under the kitchen sink, under countertops, under shelves), they likely avoid the large insecticide deposits on the tops of horizontal surfaces.  Finally, and most significantly, extensive and pervasive pyrethroid resistance has evolved in German cockroach populations over the last 3 decades, rendering even

---

[5] *Id.*

[6] Caroline Cox, *Cypermethrin*, 16 J. of Pesticide Reform 2 (Summer 1996), *available at* https://d3n8a8pro7vhmx.cloudfront.net/ncap/pages/26/attachments/original/1428423343/cyperm ethrin.pdf?1428423343.

residual spray formulations, which deliver pyrethroids directly to aggregation and foraging sites, ineffective in cockroach abatement."[7]

11.    Upon information and belief, Defendants have sold millions of units of Hot Shot through their false promises of effectiveness to consumers.

12.    Plaintiff is a purchaser of Hot Shot who asserts claims on behalf of himself and similarly situated purchasers of Hot Shot for violations of the consumer protection laws of New York, unjust enrichment, breach of express warranty and violation of the Magnuson-Moss Warranty Act.

## **PARTIES**

13.    Plaintiff Shivan Bassaw is a citizen of New York who resides in Bronx, New York.  Mr. Bassaw purchased Hot Shot from an online retailer on August 21, 2016 for approximately $6.  Prior to purchase, Mr. Bassaw carefully read the Hot Shot labeling, including the representations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."  Mr. Bassaw believed these statements to mean that Hot Shot would kill roaches, fleas, ants, and spiders, and that it would effectively control these insects from home infestations.  Mr. Bassaw relied on these representations in that he would not have purchased Hot Shot at all, or would have only been willing to pay a substantially reduced price for Hot Shot, had he known that these representations were false and misleading.  Plaintiff Bassaw used the product as directed, but it did not provide effective insect control as advertised.

---

[7] Zachary C. DeVries, et al., *Exposure risks and ineffectiveness of total release foggers (TRFs) used for cockroach control in residential settings*, BMC Public Health (28 January 2019), *available at* https://bmcpublichealth.biomedcentral.com/articles/10.1186/s12889-018-6371-z.

14.     Defendant United Industries Corporation is a Delaware corporation with its principal place of business in Earth City, Missouri.  Defendant United Industries Corporation, a subsidiary of Spectrum Brands, is a leading manufacturer of consumer pest control products in the United States.  Defendant United Industries Corporation manufactures the Products under the Hot Shot brand name.

15.     Defendant Spectrum Brands, Inc. is a Delaware corporation with its principal place of business in Middleton, Wisconsin.  Defendant Spectrum Brands, Inc. is a leading supplier of consumer pest control products throughout the United States.  Defendant Spectrum Brands, Inc. markets and distributes the Products throughout the United States.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

17.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this District.

18.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendants.

## CLASS REPRESENTATION ALLEGATIONS

19.     Mr. Bassaw seeks to represent a class defined as all persons in the United States who purchased Hot Shot (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

20.     Mr. Bassaw also seeks to represent a subclass defined as all Class members who purchased Hot Shot in New York (the "New York Subclass").

21.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

22.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of Hot Shot is false and misleading.

23.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing and promotional materials and representations, purchased Hot Shot, and suffered a loss as a result of that purchase.

24.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

25.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and

extensive litigation necessary to establish Defendants' liability.  Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system

presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendants' liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## <u>COUNT I</u>

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

26.     Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

27.     Plaintiff brings this claim individually and on behalf of members of the New York

Subclass against Defendants.

28.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive

acts and practices by making false representations on the label of Hot Shot.

29.     The foregoing deceptive acts and practices were directed at consumers.

30.     The foregoing deceptive acts and practices are misleading in a material way

because they fundamentally misrepresent the ability of Hot Shot to control infestations, kill

insects, and to penetrate into cracks and crevices where these pests live and breed.

31.     Plaintiff and members of the New York Subclass were injured as a result because

(a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for

its stated purposes, and (b) they overpaid for Hot Shot on account of its misrepresentations that it

"kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches,

fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs …

penetrates into cracks, crevices & carpet fibers."

32.     On behalf of himself and other members of the New York Subclass, Plaintiff

seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages

or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

33.     Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

34.     Plaintiff brings this claim individually and on behalf of members of the New York

Subclass against Defendants.

35.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct

that is deceptive or misleading in a material way which constitutes false advertising in violation

of Section 350 of the New York General Business Law because it fundamentally misrepresents

the ability of Hot Shot to control infestations, kill insects, and to penetrate into cracks and

crevices where these pests live and breed.

36.     The foregoing advertising was directed at consumers and was likely to mislead a

reasonable consumer acting reasonably under the circumstances.

37.     These misrepresentations have resulted in consumer injury or harm to the public

interest.

38.     As a result of these misrepresentations, Plaintiff and members of the New York

Subclass have suffered economic injury because (a) they would not have purchased Hot Shot if

they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for

Hot Shot on account of its misrepresentations that it "kills on contact," "controls heavy

9

infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

39.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Unjust Enrichment

40.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

41.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

42.     Plaintiff and Class members conferred benefits on Defendants by purchasing Hot Shot.

43.     Defendants have knowledge of such benefits.

44.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Hot Shot.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that Hot Shot "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

45.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to

Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV
### Breach of Express Warranty

46.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

48.     In connection with the sale of Hot Shot, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that Hot Shot "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

49.     In fact, Hot Shot does not conform to the above-referenced representations because Hot Shot is ineffective for its stated purposes.

50.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for Hot Shot on account of its misrepresentations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

## COUNT V
### Magnuson-Moss Warranty Act

51.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

52.     Plaintiff brings this case individually and on behalf of the members of the proposed Class against Defendants.

53.     Hot Shot is a consumer product as defined in 15 U.S.C. § 2301(1).

54.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

55.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

56.     In connection with the sale of Hot Shot, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

57.     In fact, Hot Shot is ineffective to control infestations and to kill these insects.

58.     By reason of Defendants' breach of warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

59.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' violation because (a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for Hot Shot on account of its misrepresentations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

## RELIEF DEMANDED

60.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.      For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.      For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

h.      For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 19, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   /s/ *Yitzchak Kopel*
            Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
            ykopel@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff*