**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVAN BASSAW, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED INDUSTRIES CORPORATION and SPECTRUM BRANDS, INC.,<br><br>      Defendants. | Civil Action No.: 1:19-cv-07759-JMF<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shivan Bassaw ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants United Industries Corporation and Spectrum Brands, Inc. (collectively, "Defendants").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Hot Shot Concentrated Deep Reach Fogger ("Hot Shot") in the United States.

2. Defendants represent that Hot Shot "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and "kills hidden bugs … penetrates into crevices, cracks & carpet fibers," (the "Representations") as shown in the image below:



3.      Unfortunately for consumers however, each of the Representations is false and misleading.  As explained below, Hot Shot is ineffective for pest control because it cannot reach into hiding spots where pests dwell and because the pests it targets are resistant to cypermethrin, the product's active ingredient.

4.      The draw to consumers for using insect foggers, such as Hot Shot (also sometimes referred to as "bug bombs"), is easily understood.  Many consumers are desperate to alleviate pest problems in their homes, but do not wish to incur the expense of hiring a pest control professional.  So they purchase Hot Shot in the hopes of an easy fix.  As the New York Times has noted, "in the battle against bugs, it is often low-income neighborhoods that suffer the most.

After all, when the choice comes down to a $175 visit from an exterminator of a $3 fogger, the fogger will most often win out."[1]

5. It is therefore unsurprising that insect foggers, such as Hot Shot, are so popular. The U.S. Environmental Protection Agency ("EPA") has estimated that approximately 50 million foggers are used annually.[2]

6. Unfortunately for consumers, these foggers are too good to be true. As Dr. Michael Potter, an entomology professor at the University of Kentucky, has explained, "[w]hile foggers require little effort to use, they seldom resolve, and can exacerbate, indoor pest problems."[3] As explained below, this is true for two reasons.

7. First, when foggers are activated, "[t]he entire contents are released upwards, into the airspace, where the aerosol droplets remain suspended for a period of time and then gradually settle onto floors, counter tops and other surfaces." However, "[w]hen applied in this manner, very little insecticide actually penetrates into cracks, voids, and other secluded locations where cockroaches, ants, bed bugs, and most other household pests congregate and spend most of their time."[4]

8. This is a big problem because, as Defendants' own product packaging suggests, the "cracks" and "crevices" are where the insects live and breed. Simply put, the product cannot be effective if it cannot reach the pests.

---

[1] Marc Santora, *Explosion in Apartment Highlights Risks of Using Chemical Foggers to Kill Insects*, NY Times, July 12, 2013, *available at* https://www.nytimes.com/2013/07/13/nyregion/a-risky-weapon-in-the-fight-against-insects.html.

[2] Susan C. Jones, *Ineffectiveness of Over-the-Counter Total-Release Foggers Against the Bed Bug (Heteroptera: Cimicidae)*, 105 J. of Econ. Entomology 3 at pp. 957-963 (June 2012), *available at* https://academic.oup.com/jee/article/105/3/957/913369.

[3] Michael F. Potter, *Limitations of Home Insect Foggers ("Bug Bombs")*, College of Agriculture Food and Environ. at University of Kentucky, *available at* https://entomology.ca.uky.edu/ef643.

[4] *Id.*

9. Second, the active ingredients in Hot Shot, cypermethrin and tetramethrin, are forms of pyrethrin, which is theoretically supposed to act as an insecticide. However, pyrethrins "are seldom lethal to roaches, ants, … spiders … and other crawling pests."[5] That is because these insects quickly build up a resistance to this chemical. As an article in the Journal of Pesticide Reform noted: "Resistance to cypermethrin has developed quickly in insects exposed frequently. Both agricultural and household pest species have developed resistance. The degree of resistance is usually measured with a resistance ratio, the ratio between the amount of a pesticide required to kill a resistant insect and the amount required to kill average (non-resistant) insects. … Among household pests, resistance ratios have ranged from 5 to 100. (The resistance ratio of 5 was enough to render synthetic pyrethroids ineffective.)."[6]

10. Independent peer-reviewed research published in the journal *BMC Public Health* explained the problem with insect foggers as threefold: "First … wild cockroaches could behaviorally avoid the insecticide residues. Second, aerosolized particles from [foggers] likely failed to reach places where cockroaches normally shelter. We found relatively little insecticide residues on walls near the [fogger[ discharge sites, compared to horizonal surfaces. Since cockroaches are often found under horizontal surfaces (e.g., under the kitchen sink, under countertops, under shelves), they likely avoid the large insecticide deposits on the tops of horizontal surfaces. Finally, and most significantly, extensive and pervasive pyrethroid resistance has evolved in German cockroach populations over the last 3 decades, rendering even

---

[5] *Id.*

[6] Caroline Cox, *Cypermethrin*, 16 J. of Pesticide Reform 2 (Summer 1996), *available at* https://d3n8a8pro7vhmx.cloudfront.net/ncap/pages/26/attachments/original/1428423343/cyperm ethrin.pdf?1428423343.

residual spray formulations, which deliver pyrethroids directly to aggregation and foraging sites, ineffective in cockroach abatement."[7]

11.     Upon information and belief, Defendants have sold millions of units of Hot Shot through their false promises of effectiveness to consumers.

12.     Plaintiff is a purchaser of Hot Shot who asserts claims on behalf of himself and similarly situated purchasers of Hot Shot for violations of the consumer protection laws of New York, unjust enrichment, breach of express warranty and violation of the Magnuson-Moss Warranty Act.

## **PARTIES**

13.     Plaintiff Shivan Bassaw is a citizen of New York who resides in Bronx, New York.  While in the state of New York, Mr. Bassaw purchased Hot Shot from an online retailer on August 21, 2016 for approximately $6.  Prior to purchase, Mr. Bassaw carefully read the Hot Shot labeling, including the representations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."  Mr. Bassaw believed these statements to mean that Hot Shot would kill roaches, fleas, ants, and spiders, and that it would effectively control these insects from home infestations.  Mr. Bassaw relied on these representations in that he would not have purchased Hot Shot at all, or would have only been willing to pay a substantially reduced price for Hot Shot, had he known that these representations were false and misleading.  Plaintiff Bassaw used the product as directed, but it did not provide effective insect control as advertised.

---

[7] Zachary C. DeVries, et al., *Exposure risks and ineffectiveness of total release foggers (TRFs) used for cockroach control in residential settings*, BMC Public Health (28 January 2019), *available at* https://bmcpublichealth.biomedcentral.com/articles/10.1186/s12889-018-6371-z.

14. Defendant United Industries Corporation is a Delaware corporation with its principal place of business in Earth City, Missouri. Defendant United Industries Corporation, a subsidiary of Spectrum Brands, is a leading manufacturer of consumer pest control products in the United States. Defendant United Industries Corporation manufactures the Products under the Hot Shot brand name.

15. Defendant Spectrum Brands, Inc. is a Delaware corporation with its principal place of business in Middleton, Wisconsin. Defendant Spectrum Brands, Inc. is a leading supplier of consumer pest control products throughout the United States. Defendant Spectrum Brands, Inc. markets and distributes the Products throughout the United States.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this District.

18. All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendants.

## CLASS REPRESENTATION ALLEGATIONS

19. Mr. Bassaw seeks to represent a class defined as all persons in the United States who purchased Hot Shot (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

20. Mr. Bassaw also seeks to represent a subclass defined as all Class members who purchased Hot Shot in New York (the "New York Subclass").

21. Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

22. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of Hot Shot is false and misleading.

23. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing and promotional materials and representations, purchased Hot Shot, and suffered a loss as a result of that purchase.

24. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

25. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and

extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

26.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

27.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendants.

28.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making false representations on the label of Hot Shot.

29.     The foregoing deceptive acts and practices were directed at consumers.

30.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of Hot Shot to control infestations, kill insects, and to penetrate into cracks and crevices where these pests live and breed.

31.     Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for Hot Shot on account of its misrepresentations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches,

fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

32. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

33. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

34. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendants.

35. Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law because it fundamentally misrepresents the ability of Hot Shot to control infestations, kill insects, and to penetrate into cracks and crevices where these pests live and breed.

36. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

37. These misrepresentations have resulted in consumer injury or harm to the public interest.

38. As a result of these misrepresentations, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for Hot Shot on account of its misrepresentations that it "kills on contact," "controls heavy

9

infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

39.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Unjust Enrichment

40.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

41.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

42.     Plaintiff and Class members conferred benefits on Defendants by purchasing Hot Shot.

43.     Defendants have knowledge of such benefits.

44.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Hot Shot.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that Hot Shot "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

45.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to

Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV
### Breach of Express Warranty

46.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

48.     In connection with the sale of Hot Shot, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that Hot Shot "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

49.     In fact, Hot Shot does not conform to the above-referenced Representations because Hot Shot is ineffective for its stated purposes.

50.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for Hot Shot on account of its misrepresentations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

51.     On August 9, 2019, a pre-suit notice letter was sent to Defendants via certified mail that provided notice of Defendants' breach of warranty and demanded that Defendants rectify the breaches of warranty complained of herein.  The letter also stated that if Defendants

refused to do so, a class action complaint seeking damages would be filed. Defendants have failed to comply with the letter. A copy is attached hereto as Exhibit A.

## COUNT V
### Magnuson-Moss Warranty Act

52. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

53. Plaintiff brings this case individually and on behalf of the members of the proposed Class against Defendants.

54. Hot Shot is a consumer product as defined in 15 U.S.C. § 2301(1).

55. Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

56. Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

57. In connection with the sale of Hot Shot, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

58. In fact, Hot Shot is ineffective to control infestations and to kill these insects.

59. By reason of Defendants' breach of warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

60. Plaintiff and Class members were injured as a direct and proximate result of Defendants' violation because (a) they would not have purchased Hot Shot if they had known that Hot Shot was ineffective for its stated purposes, and (b) they overpaid for Hot Shot on

account of its misrepresentations that it "kills on contact," "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."

## RELIEF DEMANDED

61. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

    a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

    b. For an order declaring that Defendants' conduct violates the statutes referenced herein;

    c. For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

    d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e. For prejudgment interest on all amounts awarded;

    f. For an order of restitution and all other forms of equitable monetary relief;

    g. For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

    h. For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: December 9, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Yitzchak Kopel*

Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
            ykopel@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
**www.bursor.com**

Y ITZCHAK  K OPEL
Tel: **646.837.7127**
Fax: **212.989.9163**
**ykopel@bursor.com**

August 9, 2019

<u>**Via Fed Ex**</u>

Spectrum Brands, Inc.
601 Rayovac Drive
Madison, WI 53711-2497

United Industries Corporation
1 Rider Trail South, #300
Earth City, MO  63045

Re:   *Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; U.C.C. §§ 2-313, 2-314; all other applicable laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Spectrum Brands, Inc. and United Industries Corporation ("You" or "Defendants") pursuant to numerous provisions New York law, including but not limited to N.Y.G.B.L. §§ 349 and 350, on behalf of our client, Shivan Bassaw.  This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express warranties described herein.

You have participated in the marketing and sale of Hot Shot Foggers (the "Products"). The Products' labeling represents that it "kills on contact, "controls heavy infestations," "keeps killing up to 2 months," "kills roaches, fleas, ants (except fire ants), spiders, & other listed insects," and that it "kills hidden bugs … penetrates into cracks, crevices & carpet fibers."  These representations are false and misleading.  Scientific research has shown that insect foggers, such as the Products, are ineffective for pest control because they cannot reach hiding spots where pests dwell and because the pests they target are resistant to the active ingredients used.

Mr. Bassaw purchased the Product based on these representations on the label.

Mr. Bassaw is acting on behalf of a class defined as all persons in the United States who purchased the Product.  Mr. Bassaw is also acting on behalf of a subclass of persons who purchased the Product in the State of New York.

To cure these defects, we demand that you make full restitution to all purchasers of the Product of all money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents concerning the design, development, and/or testing of the Products;

2.  All documents concerning the advertisement, labeling, marketing, or sale of the Products;

3.  All documents concerning communications with purchasers of the Products, including but not limited to customer complaints; and

4.  All documents concerning your total revenue derived from sales of the Products in New York and the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

*Y. Kopel*

Yitzchak Kopel