UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                   :
SHIVAN BASSAW, *individually and on behalf of all*                 :
*others similarly situated*,                                       :
                                                                   :
                                          Plaintiff,               :          19-CV-7759 (JMF)
                                                                   :
                    -v-                                            :          <u>OPINION AND ORDER</u>
                                                                   :
UNITED INDUSTRIES CORPORATION and                                  :
SPECTRUM BRANDS, INC.,                                             :
                                                                   :
                                          Defendants.              :
                                                                   :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Shivan Bassaw, a New York resident, brings this putative class action against

United Industries Corporations ("United Industries") and Spectrum Brands, Inc. ("Spectrum

Brands"), alleging that they materially misled him and other consumers when they advertised

that their product Hot Shot Concentrated Deep Reach Fogger ("Hot Shot") was effective in

killing a variety of insects within the home.  In particular, Bassaw asserts two sets of claims.

First, on behalf of a nationwide class, Bassaw brings claims for unjust enrichment and breach of

express warranty under New York law and the Magnuson-Moss Warranty Act ("MMWA").  *See*

ECF No. 19 ("Am. Compl."), ¶¶ 46-60.  Second, on behalf of a subclass of New York residents,

Bassaw alleges that Defendants engaged in deceptive acts or practices and false advertising, in

violation of Sections 349 and 350 of the New York General Business Law ("NYGBL").  *See*

Am. Compl. ¶¶ 26-39.  Defendants now move, pursuant to Rule 12(b) of the Federal Rules of

Civil Procedure, to dismiss Bassaw's claims.  *See* ECF Nos. 20 ("Motion") & 21 ("Defs.' Mem.").[1]   For the reasons that follow, Defendants' motion is denied in part and granted in part.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint and are assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Bassaw lives in the Bronx, New York.  *See* Am. Compl. ¶ 13.  Spectrum Brands, a Delaware corporation with its principal place of business in Middleton, Wisconsin, is a leading supplier of consumer pest control products throughout the United States.  *See id.* ¶ 15.   United Industries is a subsidiary of Spectrum Brands; it too is a Delaware corporation, but its principal place of business is in Earth City, Missouri.  *Id.* ¶ 14.   United Industries manufactures its pest control products under the "Hot Shot" brand name, and Spectrum Brands markets and distributes the products nationwide.  *Id.* ¶¶ 14-15.

Bassaw alleges that, on August 21, 2016, he purchased Hot Shot from an online retailer for approximately $6 and that he did so in reliance on statements contained in Hot Shot's packaging label promising that the product "kills on contact"; "controls heavy infestations"; "keeps killing for up to 2 months"; "kills roaches, fleas, ants (except fire ants), spiders & other listed insects"; and "kills hidden bugs" by "penetrat[ing] into crevices, cracks & carpet fibers." *Id.* ¶¶ 2, 13.  Bassaw "used the product as directed" — though when and where the Amended Complaint does not say — but "it did not provide effective insect control as advertised."  *Id.* ¶ 13.  On August 9, 2019, Bassaw sent Defendants a letter alleging breaches of warranty and

---

[1]     Defendants also move, pursuant to Rule 12(f), to strike allegations in the Amended Complaint purporting to bring NYGBL claims on behalf of the nationwide class.  *See* Defs.' Mem. 9-10.  But the Amended Complaint contains no such claims.  *See* Am. Compl. ¶¶ 26-60; Opp'n 7-8.  Accordingly, Defendants' motion to strike is denied.

advising that he intended to bring a class action suit for damages if they did not remedy the breaches. *Id.* ¶ 51. Ten days later, Defendants' having "failed to comply with the letter," *id.*, Bassaw filed this suit, *see* ECF No. 19.

## LEGAL STANDARDS

Defendants' motion is brought pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction to hear the case. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

By contrast, in the absence of discovery or an evidentiary hearing, a plaintiff seeking to defeat a motion to dismiss pursuant to Rule 12(b)(2) for absence of personal jurisdiction need only make a *prima facie* showing that jurisdiction exists. *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Such a showing "entails making 'legally sufficient allegations . . . ,' including 'an averment of facts that, if credited[,] would suffice'" to establish that jurisdiction exists. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). *See generally Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d

Cir. 2013) (per curiam).  A court must "view[ ] all facts in the light most favorable to the non-moving party."  *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).

Finally, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendants seek to dismiss some or all of Bassaw's claims on four grounds: first, that Bassaw lacks Article III standing because he fails to allege an injury-in-fact, *see* Defs.' Mem. 10-11; second, that the Court lacks personal jurisdiction over the claims of putative class members outside of New York, *see id*. at 6-9; third, that Bassaw did not, among other things, provide timely notice of his express warranty claims, *see id*. at 17-19; and fourth, that Bassaw fails to state a claim under the NYGBL, *see id*. at 12-17.[2]  The Court will address each argument in turn.

---

[2]      Defendants also move to dismiss Bassaw's unjust-enrichment claim and his request for injunctive relief.  *See* Defs.' Mem. 22.  In his opposition, Bassaw notes that he "will not pursue claims for unjust enrichment or injunctive relief."  ECF No. 23 ("Opp'n"), at 2 n.1.  Accordingly, on those fronts, Defendants' motion is granted on consent.

**A.  Article III Standing**

Defendants' standing challenge can be swiftly rejected.  To establish an injury-in-fact

sufficient to support Article III standing, a plaintiff must show that he "suffered an invasion of a

legally protected interest that is concrete and particularized and actual or imminent, not

conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  An injury is

particularized when it "affect[s] the plaintiff in a personal and individual way."  *Id.*  An injury is

concrete when it "actually exists" or, put another way, when it is "real" rather than "abstract."

*Id.*  Notably, this "is a low threshold," and the plaintiff need not "be capable of sustaining a valid

cause of action."  *Ross v. Bank of Am. N.A.*, 524 F.3d 217, 222 (2d Cir. 2008).

Bassaw crosses the "low threshold" here.  Bassaw alleges that he purchased Hot Shot in

reliance on its prominent labeling asserting that the product would, among other things, "kill[] on

contact"; "control[] heavy infestations"; "keep[] killing for up to 2 months"; and "kill[] hidden

bugs" by "penetrat[ing] into crevices, cracks & carpet fibers."  Am. Compl. ¶ 13.  But when he

used Hot Shot "as directed . . . it did not provide effective insect control as advertised."  *Id*.

Although sparse, these allegations are sufficient to establish a particularized injury because

Bassaw was affected in a "personal and individual way" when Hot Shot did not perform as

advertised.  *See, e.g.*, *Poppiti v. United Indus. Corp.*, 4:19-CV-2028 (SNLJ), 2020 WL 1433642,

at *2 (E.D. Mo. Mar. 24, 2020) (holding that the plaintiffs had suffered particularized injury

when candles did not ward off mosquitoes as advertised).  Bassaw's injury "is also concrete in

that [he] suffered an actual, non-speculative economic harm — even if only a few dollars" —

having paid "too much for a product based on its misleading advertising."  *Id*.  Indeed, "[t]hat

sort of 'paid too much' or 'received too little' harm is classic economic injury-in-fact." *Alaska

Electric. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 53 (S.D.N.Y. 2016).  Thus,

Bassaw has established that he suffered an injury-in-fact caused by Defendants that "is likely to

be redressed by a favorable judicial decision." *Spokeo, Inc.*, 136 S. Ct. at 1547.  Accordingly,

Defendants' Rule 12(b)(1) motion must be and is denied.

## B. Express Warranty Claims

With that, the Court turns to Bassaw's express warranty claims, beginning with

Defendants' contention that the Court lacks personal jurisdiction over the claims of putative class

members residing outside of New York and then turning to the issue of timeliness.

### 1. Personal Jurisdiction

Like their subject-matter jurisdiction argument, Defendants' contention that the Court

lacks personal jurisdiction over the claims of putative class members residing outside of New

York is easily dismissed.  Defendants' argument is based on *Bristol-Myers Squibb Co. v.*

*Superior Court*, 137 S. Ct. 1773, 1783-84 (2017) ("*Bristol-Myers*"), in which the Supreme Court

held that, in an aggregate mass tort action, a California state court lacked personal jurisdiction

over the claims raised by non-resident plaintiffs against a non-Californian defendant.  *See* Defs.'

Mem. 7.  Lower courts are divided on the question of whether *Bristol-Myers* applies to a class

action in federal court, *compare, e.g.*, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 446-47 (7th Cir.

2020) (holding that *Bristol-Myers* does not apply to federal court class actions), *reh'g and reh'g*

*en banc denied* (May 24, 2020); *Munsell v. Colgate-Palmolive Co.*, — F. Supp. 3d —, No. 19-

12512 (NMG), 2020 WL 2561012, at *8 (D. Mass. May 20, 2020) (same), *with Gazzillo v. Ply*

*Gem Indus., Inc.*, No. 17-CV-1077 (MAD) (CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22,

2018) (holding that *Bristol-Myers* applies to class actions in federal court); *In re Dental Supplies*

*Antitrust Litig.*, No. 16-CV-696 (BMC) (GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017)

(same).. The Second Circuit has not yet addressed the question.  But either way, the Court need

not reach the issue here.  For present purposes, it suffices to say that it is undisputed that the

Court has specific personal jurisdiction over Defendants with respect to the claim of Bassaw, the

sole named Plaintiff.  Absent a motion for class certification, the Court need not resolve whether it also has personal jurisdiction over the claims of putative class members outside of New York. *See, e.g.*, *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 236 (S.D.N.Y. 2020) (deferring "assessment of whether there is specific jurisdiction over the claims of putative non-New York class members until the class certification stage" (citing cases)).  Defendants' Rule 12(b)(2) motion is, therefore, denied.

### 2.  Timeliness

That said, Bassaw's express warranty claims must be dismissed for a different reason: lack of timely notice.  To assert a breach of warranty claim under New York law — and, by extension, under the MMWA — "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2–607(3)(a)); *see also, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016) (holding that a claim under the MMWA is derivative of, and dependent on, a state-law express warranty claim).[3]  "The sufficiency and timeliness of the notice is generally a question for the jury."  *Tomasino*, 44 F. Supp. 3d at 260 (internal quotation marks and brackets omitted).  But where "only one inference may be drawn as to the reasonableness of the time . . . , it becomes a question of law" that can be resolved on a motion to dismiss.  *Telit Wireless Sols., Inc. v. Axesstel, Inc.*, No. 15-CV-5278

---

[3]      Bassaw asserts that "New York courts have acknowledged an exception to the notice requirement for retail purchasers."  Opp'n 20 (citing *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737 (N.Y. App. Div. 1973)).  But that appears to be a "minority" view, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018), and in any event it is limited to "products for 'human consumption'" that cause physical injury, *Tomasino*, 44 F. Supp. 3d at 262 n.7; *see Colella*, 348 F. Supp. 3d at 143-43.  Accordingly, the exception — if it exists at all — would not apply here.

(KBF), 2016 WL 1587246, at *6 (S.D.N.Y. Apr. 18, 2016) (citing cases); *see, e.g., Petrosino v. Stearn's Prod., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (granting a motion to dismiss for lack of timely notice); *Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936, at *22-23 (Dec. 27, 2017) (report and recommendation) (same), *adopted by* 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *Tomasino*, 44 F. Supp. 3d at 260-62 (same).

Applying these standards here, the Court concludes that Bassaw's express warranty claim fails as a matter of law.  The Amended Complaint alleges that Bassaw purchased Hot Shot on August 21, 2016, but he did not give notice to Defendants until August 9, 2019 — *nearly three years later*.  To be sure, the Amended Complaint is silent with respect to when he "discover[ed]" or "should have discovered" the alleged breach, which is the relevant trigger under New York law.  N.Y. U.C.C. § 2-607(3)(a); *see Tyman*, 2017 WL 6988936, at *22.[4]  But given that Hot Shot is a product that promised immediate results ("kills on contact") and short-term results ("keeps killing for 2 months"), the Court can and does "presume[] that plaintiff[] discovered or should have discovered the breach of warranty shortly after [his] initial purchase." *Tyman*, 2017 WL 6988936, at *23 n.21.  Thus, it appears that Bassaw waited nearly three full years to provide notice to Defendants, which is plainly unreasonable as a matter of law.  *See, e.g., Tomasino*, 44 F. Supp. 3d at 260-62 (collecting cases and dismissing an express warranty claim where the plaintiff provided notice two to three years after discovering the breach); *see also, e.g.,*

---

[4]     Perhaps recognizing that the gap between when *he* discovered or should have discovered the alleged breach and when he gave Defendants notice was unreasonably long, Bassaw suggests that the relevant trigger date is when he "discovered the Product was defective not only for himself, *but for the entire class*."  Opp'n 19 (emphasis added).  But that suggestion is inconsistent with the language of the New York law.  *See* N.Y. U.C.C. § 2-607(3)(a) ("The *buyer* must within a reasonable time after *he* discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." (emphases added)).  Notably, Bassaw fails to cite — and the Court has not found — any authority to support his argument.

*Danielkiewicz v. Whirlpool Corp*., 426 F. Supp. 3d 426, 434 (E.D. Mich. 2019) ("The more than two-year period that she waited before contacting Whirlpool was, as a matter of law, unreasonable."). At a minimum, Bassaw fails to allege "facts that would permit the Court to conclude that [he] notified [Defendants] of the alleged breaches within a reasonable time after discovering them." *Tyman*, 2017 WL 6988936, at *23. That alone is grounds for dismissal of Bassaw's express warranty and MMWA claims. *See id.*; *see also, e.g.*, *Petrosino*, 2018 WL 1614349, at *8 (dismissing an express warranty claim on the ground that the plaintiff failed to "provide factual allegations, as opposed to conclusory statements, supporting the contention she notified Defendant of the alleged breach within a reasonable time after discovering them").

## C. The NYGBL Claims

Finally, the Court turns to Bassaw's claims under the NYGBL. Section 349 of the NYGBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. Relatedly, Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. To assert a claim under either Section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012) (mem.)). "The standard for recovery under . . . [section] 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002); *see also Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 525 (E.D.N.Y. 2017) ("The elements of the plaintiffs' claims under these two sections of the New York General Business Law are the same.").

9

Measured against these standards, Bassaw's claims cannot be dismissed.  First, Defendants do not — and could not — contest that in selling and marketing Hot Shot, they participated in consumer-oriented conduct.  *See, e.g.*, *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015) (summary order) ("So long as the conduct at issue can potentially affect similarly situated consumers, the requirement of consumer-oriented conduct is met." (internal quotation marks omitted)).  Second, separate and apart from the peer reviewed articles cited in the Amended Complaint — several of which note the ineffectiveness of chemicals contained in Defendants' product and the inability of foggers to reach most crevices, *see* Am. Compl. ¶¶ 6-10 — Bassaw plausibly identifies misrepresentations on Defendants' packaging.  *See id*. ¶¶ 2-3; *see also, e.g.*, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact.").  And third, contrary to Defendants' suggestion, Bassaw alleges an injury distinct from the deception itself: namely, that he "paid a premium for a product based on defendants' inaccurate representations."  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (internal quotation marks and citations omitted); *see also* Am. Compl. ¶ 31 (alleging that Bassaw and the class members "overpaid for Hot Shot on account of its misrepresentations").

Defendants' only remaining argument is that the Section 350 claim should be dismissed because Bassaw does not plead that he reasonably relied on Hot Shot's labeling.  *See* Defs.' Mem. 15-16.  In particular, they argue that Bassaw could have done independent research to find the journal articles debunking the alleged myth of Hot Shot's effectiveness.  *See id.*  The New York Court of Appeals has squarely held, however, that "[j]ustifiable reliance by the plaintiff is not an element of [a] statutory claim" brought pursuant to Section 349 or 350.  *Koch*, 967 N.E.2d at 676 (citing cases).  In any event, even if Bassaw had to prove that his reliance was reasonable, that would be a fact issue incapable of being resolved at this stage of the litigation.  In short, the

Court rejects Defendants' attempt to impose a higher burden on Bassaw than that mandated by New York law.  *See Poppiti*, 2020 WL 1433642, at *2 ("[D]efendants' argument that vaguely suggests it is at least theoretically possible for plaintiffs — in the internet age — to discern the truth for themselves goes far beyond what the reasonable opportunity test actually requires."). Accordingly, Defendants' motion is denied as to Bassaw's NYGBL claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part.  In particular, Bassaw's unjust-enrichment claim and his express warranty claims, under New York law and the MMWA, are dismissed, as is his request for injunctive relief.  By contrast, his claims under the NYGBL survive.

The Court declines to grant Bassaw leave to amend to cure the defect in his express warranty claims.  Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  In this case, leave to amend is not warranted because the defect in the express warranty claim is substantive, and Bassaw conspicuously fails to suggest that he possesses any additional facts that could cure the defect.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).  That failure is all the more significant because Bassaw was on notice of Defendants' arguments when he filed the Amended Complaint, as Defendants' original motion to dismiss raised the issue of timely notice.  *See* ECF No. 17, at 18-19.  Finally, when granted leave to amend in response to the earlier motion, Bassaw was expressly warned that he would "not be given any further

opportunity" to amend his complaint.  ECF Nos. 16-19; *see, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).  In light of these circumstances, the Court will not grant leave to amend.

Unless and until the Court orders otherwise, Defendants shall file their answer to the remaining claims **within three weeks of the date of this Opinion and Order**.  In addition, the initial pretrial conference is reinstated and ADJOURNED to **October 8, 2020,** at **3:30 p.m.**  The conference will be governed by the Court's Order of August 21, 2019, and the parties should prepare accordingly, including by submitting a joint status letter and proposed case management plan no later than the Thursday prior to that conference.  *See* ECF No. 9, at 2-3.

The Clerk of Court is directed to terminate Docket No. 20.

SO ORDERED.

Dated:  August 31, 2020
      New York, New York
                           JESSE M. FURMAN
                        United States District Judge